UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

PERFECTO GARCIA,

Plaintiff,

- against -

WILLIAM BADYNA and SHAGGY'S ORIGINAL
CHEESESTEAK,

Defendants.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 CV 4021 (RRM)

On July 16, 2013, plaintiff Perfecto Garcia commenced this action against defendants

William Badyna, a/k/a Will House ("Badyna"), and Shaggy's Original Cheesesteak ("Shaggy's")

(collectively, "defendants"), seeking, inter alia, unpaid minimum wages and unpaid overtime

wages, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"), and several

provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq. Plaintiff served

the Summons and Complaint on both defendants on July 24, 2013. On August 23, 2013, after

neither defendant filed an answer or otherwise responded to the Complaint, plaintiff requested

that a certificate of default be entered against both defendants.

On October 23, 2013, the Clerk of Court entered defaults against both defendants and on

October 30, 2013, plaintiff moved for default judgment. On October 31, 2013, the district court

referred the motion for default judgment to the undersigned to hold an inquest to determine both

liability and damages and to prepare a Report and Recommendation.

By letter dated November 15, 2013, defendant Badyna asserted that defendants had never

1

been served with copies of the Motion for Default, Damages, or Judgment. (Badyna Ltr.[1] at 1). On January 7, 2014, this Court held a hearing at which it directed the parties to contact the Court and indicate whether they were able to agree on a settlement. On January 13, 2014, when the parties were unable to reach a settlement on their own, the case was referred to the Honorable Roanne L. Mann to hold a settlement conference. On February 4, 2014, it was reported to the Court that the parties, with the assistance of Judge Mann, had reached a settlement and that a stipulation of dismissal would be filed by February 28, 2014.

When no stipulation was filed, this Court entered an Order scheduling a conference with the parties for March 3, 2014 to determine whether there was a reason that the settlement had not been finalized. Although plaintiff's counsel appeared for the conference, defendants failed to appear and did not contact the Court or counsel to request an adjournment. The Court thereafter entered a second order requiring the parties to appear on March 20, 2014 and warning defendants that if they failed to appear or otherwise notify the Court, the Court would reopen and proceed with the inquest and determine damages based on the papers that had been submitted.

On March 20, 2014, plaintiff's counsel again appeared but defendants did not, and the Court scheduled an inquest hearing for April 18, 2014. The hearing was subsequently adjourned and ultimately rescheduled for May 19, 2014. At the inquest hearing, Perfecto Garcia presented testimony in support of his request for damages. Defendants again failed to appear. Based on the papers and testimony submitted by plaintiff, the Court respectfully recommends that plaintiff be awarded damages in the amount of **$63,470.25**, inclusive of attorneys' fees and costs.

---

[1]Citations to "Badyna Ltr." refer to defendant William Badyna's letter, filed on November 18, 2014 and dated November 15, 2014.

## FACTUAL BACKGROUND

Plaintiff Garcia, a resident of the State of New York, alleges that from about November 2011 until the end of January 2013, he was employed as a kitchen assistant for defendant Shaggy's, preparing and cooking food and vegetables, and cleaning dishes and the kitchen. (Compl.[2] ¶ 3; Garcia Decl.[3] ¶¶ 3, 4). According to the Complaint, Shaggy's is located on Staten Island, N.Y. and has an annual gross volume of sales in excess of $500,000. (Compl. ¶¶ 4, 5). Plaintiff alleges that defendant Badyna is an owner and operator of Shaggy's with the power to hire and fire employees, set rates of pay and employees' schedules, and that he has control over Shaggy's day-to-day operations. (Id. ¶¶ 7, 8). Indeed, according to Mr. Garcia's Declaration, defendant Badyna hired Garcia, set his weekly schedules, issued his pay and supervised him in the kitchen. (Garcia Decl. ¶¶ 5-7). Plaintiff alleges that both Shaggy's and Badyna are "employers" within the meaning of the FLSA, 29 U.S.C. § 203. (Compl. ¶¶ 6, 9).

According to his Declaration, Garcia was paid $7.00 per hour and never received any tips as part of his salary. (Garcia Decl. ¶¶ 8, 9). Plaintiff alleges that defendants unlawfully failed to pay him one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek. (Compl. ¶ 23). He further alleges that although his work days often lasted 10 hours or longer, defendants failed to pay him spread of hours wages as required by New York State law. (Id. ¶¶ 24, 25).

Plaintiff claims that it was defendant Badyna who set plaintiff's work schedules and who

---

[2] Citations to "Compl." refer to the Complaint filed July 15, 2013.

[3] Citations to "Garcia Decl." refer to the Declaration of Perfecto Garcia, attached to Plaintiff's Memorandum of Law in Support of Plaintiff's Proposed Damages, dated November 12, 2013.

issued plaintiff's weekly pay. (Id. ¶¶ 26, 27).  Plaintiff claims that he was not provided with a written notice of his pay rate and that defendants failed to maintain proper payroll records as required by New York State law. (Id. ¶ 29; Garcia Decl. ¶¶ 17, 19).  Plaintiff claims that in September 2012, one of his weekly paychecks bounced (Garcia Decl. ¶ 10), and that from October 2012 until the end of his employment, he received only "intermittent cash payments." (Id. ¶ 11).  In his Complaint, plaintiff alleges that in October 2012, the defendant started paying him in cash "at a rate of $100.00 a week." (Compl. ¶ 31).[4]  The Complaint further alleges that in November 2012, plaintiff received only two cash payments of $50 each, and in December 2012 and January 2013, he received no pay at all despite the fact that plaintiff continued to work for Shaggy's during this period. (Id. ¶¶ 32, 33).  According to Mr. Garcia's Declaration, he received less than $500 in total between October 2012 and the end of his employment in January 2013. (Garcia Decl. ¶ 12).

_____

[4]The chart attached to plaintiff's Declaration as Exhibit B is inconsistent with the Complaint and the Declaration itself.  According to the chart, plaintiff received a single cash payment of $100 in October 2012, in contrast to the allegation in the Complaint that he was paid $100 per week in October. (Compare Garcia Decl. Ex. B with Compl. ¶ 31).  In his Declaration, plaintiff states that he "received less than $500.00 total in salary between October 2012 thorugh the end of my employment with Defendants." (Garcia Decl. ¶ 12).  Plaintiff explains that he "did not keep an exact record" of the cash payments he received. (Id. ¶ 15).  Since plaintiff's Complaint conceded that he had been paid $100 a week in October, for a total of $400, plus $100 in November based on the two cash payments of $50 each, and these numbers are consistent with plaintiff's statement in his Declaration, the Court has used the numbers in the Complaint to calculate damages in lieu of the numbers in the chart attached to Plaintiff's Declaration.

4

DISCUSSION

I.   <u>Default Judgment</u>

    A.   <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for entry of a default judgment. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. <u>See</u> <u>id.</u> Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. <u>See</u> Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. <u>Id.</u> Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default. <u>See</u> <u>Erwin DeMarino Trucking Co. v. Jackson</u>, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts

5

must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants. See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012).

The burden is on the plaintiff to establish his entitlement to recovery. See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See id. For the purposes of an inquest, the court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

6

B.    Entry of Default Judgment

1.    Liability for Damages Alleged in Complaint

In this case, plaintiff alleges that defendants violated the FLSA, 29 U.S.C. §§ 201, 207(a)

et seq., and the Minimum Wage Act, N.Y. Lab. Law §§ 650, 652 et seq., by failing to pay

minimum wages and overtime at the rate of one-and-a-half times the regular rate.  (Compl. ¶¶ 36,

40, 41, 44, 45, 49, 50; Pl.'s Mem.[5] at 2-3).  Plaintiff also alleges that defendants violated the

NYLL, not only by failing to pay him the proper amount in minimum wages and overtime, but

also by failing to pay plaintiff one hour's pay at the basic minimum hourly wage rate for any

day(s) in which the "spread of hours" from the beginning of the employee's day to the end of the

day, exceeded ten hours.  (See Compl. ¶ 54; Pl.'s Mem. at 4);  N.Y. Comp. Codes R. & Regs. tit.

12, §§ 142-2.4(a), 146-1.6; N.Y. Lab. Law §§ 650 et seq.  Plaintiff thus seeks to recover an

amount equivalent to his underpaid minimum wages, overtime wages, and liquidated damages,

pursuant to 29 U.S.C. §§ 201, 207(a), 216(b) et seq., and N.Y. Lab. Law §§ 650, 652(1), 663(1)

et seq.; unpaid spread of hours wages, pursuant to N.Y. Lab. Law § 663, and N.Y. Comp. Codes

R. & Regs. tit. 12, §§ 142-2.4, 146-1.4; and attorneys' fees and costs, pursuant to 29 U.S.C. §

216(b), and N.Y. Lab. Law § 663(1).  (See Compl. ¶¶ 35, 36, 41, 44, 45, 48, 49, 50, 54, 55, 61;

Pl.'s Mem. at 3-5).  Additionally, plaintiff seeks damages based on defendants' failure to keep

records of the total hours that plaintiff worked each week and to provide written notice to

plaintiff regarding his rate of pay, as required by N.Y. Lab. Law §§ 195, 198.  (See Compl. ¶¶

57, 58, 60; Pl.'s Mem. at 5).

--------------------------------------

[5]Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of
Plaintiff's Proposed Damages, filed on November 13, 2013.

7

a)      Fair Labor Standards Act

To establish a claim under the FLSA, plaintiff must prove the following: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Sec. of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling,
> or otherwise working on goods or materials that have been
> moved in or produced for commerce by any person; and . . .
> whose annual gross volume of sales made or business done is
> not less than $500,000.

29 U.S.C. § 203(s)(1)(A). In his Complaint, plaintiff alleges that defendant Shaggy's has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, and has had gross revenues in excess of $500,000. (Compl. ¶ 6).

As for defendant Badyna, plaintiff alleges that he is an owner or principal of Shaggy's, and that he had the power to hire and fire employees, set wages and schedules, and oversee the day-to-day operations of Shaggy's. (Id. ¶¶ 7, 8). Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To

8

"employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). An individual may be liable as an employer under the FLSA so long as he exercises "operational control" over the employee in question. See Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013). Based on the allegations in the Complaint regarding defendant Badyna, plaintiff has adequately alleged the elements necessary to state a claim against Badyna as an "employer."

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce . . ." 29 U.S.C. § 206(a).

Plaintiff alleges in the Complaint that he was an employee engaged in commerce and/or in the production of goods for commerce, as defined by the FLSA. (See Compl. ¶¶ 3, 6). It follows, therefore, that for purposes of this default, he qualifies as an "employee" under the FLSA. Additionally, the Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions.[6]

Moreover, plaintiff alleges that during the period of his employment, he was scheduled to work approximately 13 hours per day from Sunday to Thursday and 14 hours per day on Fridays and Saturdays. (Garcia Decl. ¶¶ 21, 22). Plaintiff further alleges that he was rarely given a lunch break and he was never paid overtime for any of the hours he worked over 40 hours per week. (Id. ¶ 23; Compl. ¶ 23). Plaintiff further alleges that for a period of time, he was not paid minimum wages, and instead received less than $500 in total for the period of his employment

_____

[6]See 29 U.S.C. § 213(a) (setting forth the exemptions).

9

from October 2012 to January 2013.[7] (Garcia Decl ¶ 12; Compl. ¶¶ 31-33).

Thus, because defendants are in default, the Court accepts plaintiff's uncontested allegations as to liability as true and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA against both the corporate defendant, Shaggy's, and against defendant Badyna.

b)   <u>New York Labor Law</u>

Plaintiff also alleges that defendants violated the NYLL. Like the FLSA, the NYLL establishes certain minimum wage rates and requires that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week. See N.Y. COMP. CODE. R. & REGS. tit. 12, §§ 142-2.2; see also. Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003). In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread of hours" wages). N.Y. COMP. CODE. R. & REGS. tit. 12, §§ 142-2.4(a), 146-1.6.

To recover under the NYLL, plaintiff must prove that he was an "employee" and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407, 408 (E.D.N.Y. 2009). Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law. See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer"). Similarly, an employee is simply defined as "any individual employed or

---

[7]See n.4 supra.

permitted to work by an employer in any occupation . . ." N.Y. Lab. Law § 651(5).

In this case, plaintiff alleges that he was employed by defendants within the meaning of Sections 2 and 651 of the NYLL. (See Compl. ¶¶ 39, 48). Plaintiff further alleges that defendants willfully failed to pay him overtime as prescribed by the NYLL (id. ¶¶ 45, 46), and willfully failed to pay him an additional hour's pay at the minimum wage for each day that he worked more than ten hours, in violation of the NYLL. (Id. ¶¶ 50, 51).

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state a claim against both defendants under the New York Labor Law.

### 2.    Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, and for the reasons stated herein, the Court finds that plaintiff has sufficiently established liability as to warrant entry of a default judgment for damages.

Here, it is beyond dispute that defendants are in default. Although defendant Badyna responded to the inquest order and appeared for a number of conferences, he failed to move to vacate the default and never filed an answer. Moreover, despite efforts by this Court to obtain his attendance at a conference to address his concerns with the settlement that was reached with the assistance of Judge Mann, he has refused to appear. Thus, defendant Badyna is in default.

Similarly, Shaggy's is in default, because it never filed an answer nor did it retain an attorney to represent it in this action. The failure by the corporate defendant to obtain counsel in this case constitutes a failure to defend because a corporation cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its

11

attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)

(discussing the rationale for requiring corporations, as "artificial" entities, to appear only through

counsel). Moreover, despite an explicit Order from this Court warning that a default would enter

if the two defendants failed to appear at the last conference, they failed to appear and did not

otherwise contact the Court. They also failed to appear at the inquest hearing. See Hirsch v.

Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear

– it does not even oppose this motion [for entry of default judgment]").

Here, defendants' failure to comply with the Court's Order to appear or respond to the

plaintiff's request for damages warrants the entry of a default judgment. Further, the amount of

money involved in this case is not significant. Cf. id. (entering default but giving defendant 20

days to set aside the default because plaintiff's damages request ran well into the millions of

dollars).

Given the numerous opportunities afforded to defendants, and their failure to participate

in these proceedings, the Court finds no compelling reason to delay further. Accordingly, it is

respectfully recommended that default judgment be entered against defendants Badyna and

Shaggy's.

## II.    Damages

### A.    Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-

pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v.

E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977

(S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au

12

Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that "[t]he Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, an inquest hearing was held on May 19, 2014 before the undersigned, at which plaintiff appeared but defendants did not.  Since both defendants are in default, plaintiff's evidence on damages is undisputed.

B.    Damages Requested by Plaintiff

According to plaintiff's Declaration, he started working at Shaggy's on November 1, 2011, receiving $7.00 an hour for all hours worked, including overtime hours. (Garcia Decl. ¶¶

13

3, 8).  In September 2012, approximately eleven months into his employment with defendants, one of his weekly paychecks bounced.  (Id. ¶ 10).  Thereafter, between October 2012 and January 2013, plaintiff alleges that he only received "intermittent cash payments" from defendant totaling less than $500.00.  (Id. ¶¶ 11-12).  Plaintiff has not provided records to verify the total number of hours worked each week, during the initial year of employment from November 2011 to November 2012, and from December 17, 2012 to January 6, 2013, but he claims to have worked an average of 72 hours per week during those periods.  (Id. at Ex. B).  Beginning in November 2012, when he stopped receiving wages on a regular basis, through the end of his employment in January 2013 (except for the three-week period from December 17. 2012 to January 6, 2013), plaintiff prepared time sheets for certain weeks, reflecting his hours and estimated income, based on wages of $7.00 per hour.  (Id. ¶¶ 11, 12, 16; Ex. A).  According to Mr. Garcia, he often worked six days a week, was rarely given a lunch break, and was forced to eat while working. (Id. ¶¶ 20, 23).  Finally, plaintiff claims that his requests to be paid were ignored by defendants, whom Mr. Garcia also alleges never informed him of the minimum wage required by law and failed to provide necessary tax forms or written notice of his rate of pay.  (Id. ¶¶ 17, 18, 19).

      1.   <u>Minimum Wage and Overtime - Standards</u>

      As an initial matter, plaintiff's Declaration and submissions as to the hours worked and rate of pay received are a sufficient basis for this Court to recommend an award of damages, even in the absence of further documentation.  Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29 U.S.C. §

251, et seq). The Supreme Court in Anderson v. Mt. Clemens Pottery Co. noted, however, that

"employees seldom keep . . . records [of hours worked] themselves; even if they do, the records

may be and frequently are untrustworthy." 328 U.S. at 687. By defaulting, defendants have

"deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering

plaintiff's ability to prove his damages." Santillan v. Henao, 822 F. Supp. 2d at 294. In default

cases, the Supreme Court has held that "an employee has carried out his burden if he proves that

he has in fact performed work for which he was improperly compensated and if he produces

sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

inference." Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson v.

Mt. Clemens Pottery Co., 328 U.S. at 687).

      In light of this holding, courts in this Circuit have held that where a defendant-employer

defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo

Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). Otherwise, defendants in

FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation

efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior

Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29

U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the

persons employed by him and of the wages, hours, and other conditions and practices of

employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7

(S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-shifting standard"

where employers fail to comply with this statutory duty of record keeping).

      New York law also requires that employers keep various, detailed employment records.

New York Labor Law § 196(a) requires that employers who fail to maintain the appropriate

records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196(a). Additionally, employers are required to keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information. See N.Y. LAB. LAW § 195(1) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances."); N.Y. Lab. Law § 195(2) (requiring employers to notify employees of any changes in the pay day prior to changing the pay day); N.Y. Lab. Law § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages"); N.Y. Lab. Law § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004). Plaintiff claims not only that he is owed overtime wages, but also that he never received adequate minimum wages. (Garcia Decl. ¶ 8) (claiming that defendant paid plaintiff $7.00 per hour); see 19 U.S.C. § 206(1)(C) (instituting a $7.25 per hour minimum wage as of July 24, 2009); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2 (requiring a basic minimum hourly wage of $7.25 per hour on and after January 1, 2011, through the time of plaintiff's employment).

Here, the evidence offered to support plaintiff's claim that he was paid less than the

16

minimum wage consists of plaintiff's Declaration and self-created time sheets from November 2012 to January 2013. Plaintiff is unable to offer additional records to corroborate these claims, because, according to plaintiff, in October 2012, defendants began to pay him in cash and did not provide him with pay stubs or other documentation. (Garcia Decl. ¶ 11). Given that defendants have not appeared in this action to challenge plaintiff's claims, the Court finds plaintiff's evidence credible as it has not been impeached. Under both federal and state law, an employee is entitled to overtime pay, or one and one-half times the employee's regular rate, for hours worked in excess of 40 hours in one work week. See 29 U.S.C. § 207(a)(2)(C); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Accordingly, this Court has examined plaintiff's submissions and calculated damages based on the applicable statutes.

### 2.   Calculation of Overtime and Minimum Wages

#### a.   Minimum Wage

First, the Court must determine how much plaintiff is entitled to recover for unpaid minimum wages. From the beginning of his employment until September 30, 2012, plaintiff was paid at the rate of $7.00 an hour, below both the federal and state minimum wage of $7.25 an hour. (Garcia Decl. ¶ 8); see 19 U.S.C. § 206(1)(C); N.Y. Lab. Law § 652. According to his Declaration, plaintiff claims that he never received tips, and that he was not compensated for working overtime. (Garcia Decl. ¶¶ 2, 9).

Plaintiff claims that he worked for defendant for approximately 64.8 weeks, working at least 40 hours a week. Since the Court credits plaintiff's claim that he worked at Shaggy's at least

17

40 hours per week for 64.8 weeks, the Court finds that he was entitled to receive $18,792[8] in straight time payments at the minimum rate of $7.25 per hour, over the entire period of his employment.

To calculate the amount owed by defendant in unpaid minimum wages, the Court subtracts the amounts actually paid to plaintiff from the $18,792 in minimum wages that he was owed. Based on plaintiff's testimony, from November 1, 2011 to September 30, 2012 (a period of 47.6 weeks), he was actually paid $7.00 per hour, which for 40 hours a week yields wages paid in the amount of $280 per week, or a total of $13,328 for hours worked up to 40. (Id. at Ex. A). Thereafter, from October 1, 2012 until the end of his employment on February 1, 2013, defendants did not pay plaintiff on a regular basis. (Id. ¶ 11). During that period, plaintiff reports that he only received sporadic cash payments totaling $500, despite working at least 40 hours a week for those 17.2 weeks. (Id. ¶ 12; Compl. ¶¶ 31-33).

Subtracting the total amount paid to plaintiff – $13,828 – from the amount he should have received if properly paid minimum wages of $7.25 an hour, plaintiff is owed **$4,964** in unpaid minimum wages for hours worked up to 40 per week for the entire period of his employment.

    b. <u>Overtime Payments</u>

Plaintiff was also entitled to overtime payment at a rate of 1.5 times the minimum wage rate of $7.25 for each hour worked over forty hours in any workweek. Plaintiff claims he never received any such payments. (Garcia Decl. ¶ 2). While calculating the amount of minimum wage payments plaintiff is owed was relatively straightforward since plaintiff claims to have

---

[8]This figure is the product of the number of weeks worked (64.8) times 40 hours per week, times the minimum wage rate of $7.25 per hour.

worked at least forty hours in each week, determining the amount of overtime wages plaintiff is owed is more difficult, since the Court must determine exactly how many hours over forty plaintiff worked in any workweek over the entire period of his employment.

Under the FLSA, a workweek is "a fixed and regularly occurring period of 168 hours–seven consecutive 24-hour periods." 29 C.F.R. § 778.105. The NYLL uses the same definition. See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.11 (defining a "week of work" as "a fixed and regularly recurring period of 168 hours - 7 consecutive 24 hour periods").

Plaintiff contends that he worked 72 hours per week in each week he did not keep a time sheet. (Garcia Decl. Ex. B).[9] Since he has no time sheets for the period from the beginning of his employment on November 1, 2011 until October 30, 2012 (52 weeks), and no time sheets for the period from December 17, 2012 to January 6, 2013 (3 weeks), it appears that he is seeking 32 hours of overtime for a total of 55 weeks. (Id.)[10] Assuming that plaintiff worked 72 hours for

---

[9]Although plaintiff seems to be seeking to recover for only 72 hours of work in the weeks where he did not keep time sheets (Garcia Decl. Ex. B), his Declaration indicates that he may actually have worked more hours than he seeks. Specifically, in his Declaration, he states that he "frequently worked six (6) days per week" and that he "usually" worked 13-hour shifts on Sundays, Mondays, Wednesdays, and Thursdays and 14-hour shifts on Fridays and Saturdays. (Garcia Decl. ¶¶ 20-22). Using these numbers, he could have worked as much as 80 hours per week on some occasions. However, because he only seeks to recover for overtime based on 72 hours of work in weeks where he did not keep time sheets, the Court has used that figure in calculating overtime payments owed for the weeks where he has no time sheets.

[10]Based on the calendar, there are 52 full weeks between November 1, 2011 and October 30, 2012. However, since defendant stopped providing plaintiff with regular payments on October 1, 2012, plaintiff's Exhibit B breaks the period of November 1, 2011 to October 30, 2012 into two separate periods – November 1, 2011 to September 30, 2012 and October 1, 2012 to October 30, 2012. In calculating the number of weeks, Exhibit B lists the first period as 47.6 weeks and the second period from October 1, 2012 to October 30, 2012 as 4.2 weeks, which totals only 51.8 weeks, rather than 52. It appears that this discrepancy may be due to the way in which plaintiff rounded his numbers in the chart, and in doing so lost time. However, for simplicity's sake, and because the 52 week period is actually more accurate, the Court has calculated plaintiff's overtime using the 52 week period.

each of these weeks, he worked a total of 1,760 hours of overtime during this period (55 weeks times 32 hours = 1,760).

For the weeks when plaintiff kept time sheets, plaintiff asserts that he worked a total of 220 overtime hours over the course of that period. (Id.) Thus, plaintiff worked a total of 1,980 overtime hours over the entire course of his employment. Since plaintiff should have been paid at the rate of one-and-a-half times the minimum wage rate of $7.25 for this work, plaintiff should have been paid at the rate of $10.875 per hour of overtime. Thus, plaintiff should have received a total of $21,532.50 for hours worked in excess of 40 over the course of his employment (1,980 overtime hours times $10.875 per hour).

To calculate the amount of overtime wages owed to plaintiff, the Court again subtracts the amount that plaintiff was actually paid – namely, $7.00 per hour for hours worked over forty from November 1, 2011 to September 30, 2012.[11] Thus, since plaintiff was only paid a total of $10,622.00[12] for hours worked over 40 in any week during his employment, he is therefore entitled to receive **$10,910.50** in unpaid overtime damages (the difference between what he was owed, $21,532.50, and what he was actually paid, $10,622.00).

---

[11] As noted, he was only paid a total of $500 after September 30, 2012, and the Court has already taken that amount into account in determining base wages.

[12] This figure represents the product of the number of weeks plaintiff was paid a regular, hourly wage (47.6), the rate at which plaintiff was paid ($7.00/hr), and the number of hours he worked in excess of 40 for each of those weeks (32). It assumes that plaintiff worked 72 hours per week, and that those hours were evenly distributed over the course of the week, since it assumes that when he only worked .6 of a week, he was paid .6 of what he would have been paid in a full, 72 hour workweek. This is an approximation, since plaintiff indicated that he did not work the same number of hours each day, and did not work seven days a week. (Garcia Decl. ¶¶ 20-22). Since defendant has failed to challenge these assertions, however, the Court credits them.

In total, plaintiff is owed $4,964 in unpaid minimum wages and $10,910.50 in unpaid overtime, and the Court respectfully recommends that defendants reimburse plaintiff in the total amount of **$15,874.50**.

### 2.   Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to both federal and state law. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA. Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260). This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d 132, 141-42 (2d Cir. 1999)).

Under the NYLL, an employee is also entitled to liquidated damages "equal to one hundred percent of the total of such underpayments found to be due," unless the employer proves a good faith basis for believing he or she was in compliance with the law. N.Y. Lab. Law § 663(1). In contrast to the analogous FLSA provision, the purpose of the state law is to "constitute a penalty to deter an employer's willful withholding of wages due." Jemine v. Dennis, 901 F. Supp. 2d at 388 (quoting Reilly v. Natwest Mkts. Group, Inc., 181 F.3d 253, 265 (2d Cir. 1999)).

21

In this Circuit, "the majority view is that plaintiffs may recover liquidated damages under both statutes because each award serves fundamentally different purposes." Gomez v. El Rancho de Andres Carne de Tres, Inc., No. 12 CV 1264, 2014 WL 1310296, at *8 (E.D.N.Y. March 11, 2014); see also Jemine v. Dennis, 901 F. Supp. 2d at 388; Maliza v. 2011 MAR-OS Fashion, Inc., No. 07 CV 463, 2010 WL 502955, at *1, n.4 (E.D.N.Y. Feb. 10, 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008).

Here, defendants have defaulted and therefore have not offered any evidence that their inadequate minimum wage and overtime payments were carried out with a good faith belief that their compensation practices were in compliance with either federal or state law. Thus, this Court finds defendants liable for the liquidated damages available under both statutes. Pursuant to 29 U.S.C. § 216(b), plaintiff is entitled to an award of liquidated damages of $15,874.50, and an additional $15,874.50, under N.Y. Lab. Law § 663(1). Accordingly, it is respectfully recommended that plaintiff receive a total award of **$31,749** in liquidated damages.

### 3. Spread of Hours Pay Under the NYLL

Plaintiff seeks to recover unpaid spread of hours pay, pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. New York law "requires an employer to pay an employee for one additional hour at the minimum hourly wage for any day in which the employee works over ten hours." Jaramillo v. Banana King Rest. Corp., No. 12 CV 5649, 2014 WL 2993450, at *4 (E.D.N.Y. June 2, 2014) (quoting Siemieniewicz v. CAZ Contracting Corp., No. 11 CV 0704, 2012 WL 5183375, at *12 (E.D.N.Y. Sept. 21, 2012)); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. Section 663 of the NYLL expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise owed to him or her under the statute. See Santillan v. Henao, 822 F. Supp. 2d at 293; N.Y. Lab. Law § 663(1).

22

For the same reasons discussed above, in light of defendant's failure to comply with federal and state employer record keeping requirements, plaintiff's allegations as set forth in the Complaint are sufficient to impose liability on defendants. Plaintiff's submissions and testimony establish that he never received spread of hours pay, and that, over the course of his employment, he worked more than ten-hour shifts on most days. (Compl. ¶¶ 53, 54, 55; Garcia Decl. ¶¶ 21, 22, Ex. A). The Court therefore finds that plaintiff is entitled to recover an additional hour of compensation at the minimum wage rate of $7.25 per hour for each day that he worked over ten hours.

In order to determine how much plaintiff is entitled to recover in unpaid spread of hours payments, the Court must determine how many days he worked more than ten hours during the course of his employment. According to plaintiff's handwritten time sheets, during the period where he was recording the hours he worked,[13] he worked more than ten hours a day on a total of 48 days. (Garcia Decl. Ex. B). For the remaining periods of plaintiff's employment (amounting to 55 weeks), the plaintiff has claimed to have worked over ten hours six days per week. (Garcia Decl. Ex. A). This assertion is consistent with plaintiff's other submissions. Plaintiff claims to have worked 72 hours per week. If plaintiff worked six days a week during that period and worked the same number of hours each day, he would have worked approximately 12 hours each day. This comports with the amount of time that plaintiff usually worked, based on his time sheets. Thus, plaintiff is entitled to spread of hours pay for the 330 days in each week for which he did not submit time sheets.

Therefore, adding these 330 days to the 48 days covered by plaintiff's time sheets,

---

[13]This is the period from November 4, 2012 to February 1, 2013, except for the three weeks from December 7, 2012 to January 6, 2013, for which plaintiff did not submit time sheets.

plaintiff is entitled to spread of hours pay for approximately 378 days of work, equaling one

additional hour of pay at the minimum wage rate of $7.25 per hour, for a total of **$2,740.50**. The

Court respectfully recommends that plaintiff receive an award of $2,740.50 to compensate him

for unpaid spread of hours pay.

### 4.    Rate of Pay Notification Under the NYLL

Plaintiff also seeks damages due to defendants' alleged failure to issue written notice of

his rate of pay, in violation of N.Y. Lab. Law §§ 195 and 198. (See Compl. ¶¶ 57, 58, 60; Pl.'s

Mem. at 5). Specifically, plaintiff claims he is entitled to $50.00 per week for each week that the

defendants failed to issue him a written notice of his rate of pay, with a maximum award set by

statute of $2,500.00. (Pl.'s Mem. at 5). Plaintiff claims that he was never issued a written notice

of his rate of pay and that he worked for defendants for over 50 weeks. Thus, he requests the

maximum award of $2,500.00. (Id.)

Section 195(1)(a) of the NYLL went into effect April 9, 2011, approximately 7 months

prior to the start of plaintiff's employment. The statute requires that every employer provide his

or her employees, at the time of hiring, and on or before February 1st of each subsequent year of

the employee's employment, with a notice containing the following information: the rate of pay

and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging

allowances; the regular pay day designated by the employer in accordance with Section 191; the

name of the employer; any "doing business as" names used by the employer; the physical address

of the employer's main office or principal place of business, as well as a mailing address if

different; the telephone number of the employer; plus such other information as the

commissioner deems material and necessary. N.Y. Lab. Law § 195(1)(a). If such notice is not provided to the employee within 10 business days of his or her first day of employment, "he or she may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars." N.Y. Lab. Law § 198(1-b).

Accepting plaintiff's allegations that he never received written notice required by Section 195(1)(a) as true, the Court finds that plaintiff is entitled to recover damages for defendants' violation of Section 195(1)(a). See Jaramillo v. Banana King Rest. Corp., 2014 WL 2993450, at *6-7 (holding that plaintiff was entitled to receive statutory maximum of $2,500.00 in damages in a default judgment case because employer failed to provide required notice for plaintiff's entire employment period of 61 weeks). Plaintiff alleges he was employed by defendants from approximately November 2011 until the end of January 2013, a time period exceeding 65 weeks. (Garcia Decl., Ex. B). Thus, the Court respectfully recommends that plaintiff be awarded the maximum award of **$2,500.00**, or $50 per week for the maximum 50 weeks for defendants' violation of N.Y. Labor Law § 195(1)(a). See N.Y. Lab. Law § 198(1-b).

### C.    Attorney's Fees and Costs

Plaintiff seeks to recover an award of "reasonable attorney's fees and costs" (see Pl's Mem. at 5), pursuant to applicable provisions of the FLSA and the NYLL. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Courts in this Circuit determine the "presumptively reasonable fee" by multiplying the number of hours reasonably expended on litigation by an hourly rate that a reasonable, paying client would be willing to pay. See Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009); Jemine v. Dennis, 901 F. Supp. 2d at 391 (quoting Hensley v. Eckerhart, 461 U.S.

25

424, 433 (1983)); Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07 CV 319, 2010 WL

2539771, at *1 (E.D.N.Y. Mar. 15, 2010). In order to reach this number, "courts look to the

'rates prevailing in the community for similar services of lawyers of reasonably comparable skill,

experience, and reputation.'" Jemine v. Dennis, 901 F. Supp. 2d at 392 (quoting Cruz v. Local

Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal citations omitted)).

     Although courts retain broad discretion in awarding fees, Peralta v. M&O Iron Works,

Inc., No. 12 CV 3179, 2014 WL 988835, at *13 (E.D.N.Y. March 12, 2014), the Second Circuit

has explained that the community to which the district court should look is the district in which

the district court sits. Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 725 (E.D.N.Y. 2009)

(citing Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir.

2008)). Plaintiff bears the burden of proving the reasonableness of requested fees, "preferably

through contemporaneous time records that describe with specificity the nature of the work done,

the hours expended, and the dates." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 94

(E.D.N.Y. 2012) (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d

1136, 1147-48 (2d Cir. 1983)). Additionally, among the "critical ingredients" in determining a

reasonable hourly rate are the "nature of representation and type of work involved in a case."

Jemine v. Dennis, 901 F. Supp. 2d at 392 (quoting Arbor Hill Citizens Neighborhood Ass'n v.

County of Albany, 522 F.3d at 184). Courts in this Circuit are guided by: (1) rates awarded in

prior cases; (2) the Court's own knowledge of prevailing rates in the district; and (3) evidence

submitted by the parties. Santillan v. Henao, 822 F. Supp. 2d at 300 (citing Farbotko v. Clinton

County of N.Y., 433 F.3d 204, 209 (2d Cir. 2005)).

     In accordance with the requirements set out in New York State Association for Retarded

Children, Inc. v. Carey, 711 F.2d at 1147-48, plaintiff's counsel has provided a detailed time

record of the tasks performed in this case, along with corresponding fee rates based on the employee who performed the tasks. (See Rumack Decl. at Ex. A). Plaintiff's counsel claim to have spent a total of 36.6 hours and expended $514.25 in costs associated with this matter for a total of $10,906.25. (Id.) Plaintiff asserts that two attorneys, Darren Rumack and Xian-Ming Lei, worked on this matter, along with one paralegal. (Id.). Plaintiff's counsel explained that Mr. Rumack has been practicing law since 2007 and that Mr. Lei has been practicing law since 2011, having been admitted to the New York State Bar in 2012. (See Rumack Decl. ¶¶ 9, 10). Both attorneys' practices consist "mainly of wage and hour and general employment law, as well as workers' compensation and Social Security Disability law." (Id.)

        1.   Hourly Rates

     According to materials submitted on behalf of plaintiff, Mr. Rumack charges an hourly rate of $300 and Mr. Lei charges an hourly rate of $250. (Rumack Decl. at Ex. A). When this matter began, Mr. Rumack had approximately six years of experience and Mr. Lei had approximately one year of experience as licensed and practicing attorneys specializing in this area of law. (See Rumack Decl. ¶¶ 9, 10). Analysis of cases in this district reveal that the requested hourly rate for Mr. Rumack is within the reasonable range for an attorney of his experience in this district; the requested rate for Mr. Lei, a junior associate with one year of experience, is a bit high. See, e.g., Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (holding that rates of $300 to $400 per hour for partners and $200 to $300 per hour for senior associates and $150 to $200 per hour for junior associates were reasonable); Jaurez v. Precision Apparel, Inc., No. 12 CV 2349, 2013 WL 5210142, at *14 (E.D.N.Y., Sept. 13, 2013) (collecting FLSA cases where partners received fees of $200 to $350

and associates received from $100 to $295 per hour); Gunawan v. Sake Sushi Rest., 897 F. Supp.

2d at 94-95 (reducing the hourly rate of a partner with 5 years experience in the relevant practice

area from $350 to $275 and reducing the hourly rate of an associate with 3 years of experience in

the relevant practice area from $300 to $225); Penberg v. HealthBridge Mgmt., No. 08 CV 1534,

2011 WL 1100103 at *6 (E.D.N.Y. March 22, 2011) (observing that "reasonable fees in this

district vary from $200 to $375 for partners and $100 to $295 for associates); Estrella v. P.R.

Painting Corp., 596 F. Supp. 2d at 725-26 (finding that an hourly rate of $250 for an attorney

with approximately 12 years of experience in labor and employment law was an appropriate

award for his work in an FLSA case); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207

(E.D.N.Y. 2007) (collecting cases showing that hourly rates for attorneys in Eastern District of

New York cases ranged from $200 to $350 for partners, $200 to $250 for senior associates, and

$100 to $150 for junior associates).

In light of the nature of the case and the rates awarded in prior cases from this district,

this Court recommends that fees be calculated based on a rate of $300 per hour for Mr. Rumack

and $200 per hour for Mr. Lei.

Plaintiff also requests payment at an hourly rate of $60 for work completed by a paralegal

in the firm. (Rumack Decl. at Ex. A). The Court finds this rate is appropriate and well within

the typical scope of hourly rates for paralegal assistants in this district. See Cho v. Koam Med.

Servs. P.C., 524 F. Supp. 2d at 207 (explaining that recent Eastern District of New York cases

have approved hourly rates of $70 to $80 for legal assistants); King v. STL Consulting, LLC, No.

05 CV 2719, 2006 WL 3335115, at *8 (E.D.N.Y. Oct. 3, 2006) (recommending an hourly rate of

$70 for paralegal work); Trustees of Local 531 Pension Plan v. Corner Distribs., Inc., No. 07 CV

28

529, 2008 WL 2687085, at *9 (E.D.N.Y July 8, 2008) (collecting cases showing that $50 to $80 is the typical hourly rate range in the Second Circuit for paralegal work in ERISA cases). Therefore, this Court approves the hourly rate of $60 for the paralegal work on this case.

      2.    Hours Expended

Counsel for plaintiff represents that 36.6 hours were spent working on this case. (Rumack Decl., Ex. A.).  To determine the reasonableness of an attorney's fees request, the Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)). In this Circuit, judges are required to "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d at 208 (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

As a preliminary matter, this Court finds that counsel's submission of time records sufficiently meets the Second Circuit's requirements, according to which "all applications for attorney's fees [must] be supported by contemporaneous records." Alejo v. Darna Rest., No. 09 CV 5436, 2010 WL 5249383, at *6 (S.D.N.Y. Dec. 17, 2010), report and recommendation amended, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011) (quoting Scott v. City of New York, 626 F.3d 130, 132 (2d Cir. 2010)); see New York State Ass'n for Retarded Children, Inc. v. Carey,

29

711 F.2d at 1148 (holding that attorneys who apply for court-ordered compensation must document the application with "contemporaneous time records," which should specify, "for each attorney, the date, the hours expended, and the nature of the work done").

After examining the time records submitted by plaintiff's counsel, the Court finds the 36.6 hours expended by plaintiff's counsel in this case to be reasonable. Generally, the "high-end amount of hours spent on eases [*sic*] in a similar procedural posture (i.e. a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater). Here, it does not appear that plaintiff's attorneys spent excessive amounts of time completing necessary tasks for the case, particularly given the fact that defendants actually prolonged the matter by requesting more time after the entry of default was entered, engaged in settlement discussions, reached a settlement with the assistance of Judge Mann, and then defaulted on the settlement. Thus, it appears that the 36.6 hours spent on this case by plaintiff's attorneys is reasonable. Indeed, courts have approved requests for higher numbers of hours in standard default cases.

### 3. Calculation of Attorney's Fees

Based on the foregoing analysis, this Court respectfully recommends that plaintiff be awarded attorney's fees in the amount of **$10,092.00**, based on the following hourly rates and time expenditures:

30

|  | Rate | Hours | Total |
|---|---|---|---|
| Darren Rumack | $300 | 29.4 | $8,820 |
| Xian-Ming Lei | $200 | 6 | $1,200 |
| Paralegal | $60 | 1.2 | $72 |
|  | Total: | 36.6 | $10,092 |

      4.    <u>Costs</u>

     Plaintiff's counsel also requests $514.25 in litigation costs expended during the course of this litigation.  Provisions of both the FLSA and the NYLL provide that plaintiffs may recover "reasonable" costs.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  In this Circuit, only costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable.  <u>Jemine v. Dennis</u>, 901 F. Supp. 2d at 394 (quoting <u>Moon v. Kwon</u>, No. 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002)).  Here, the requested costs include this Court's filing fee, as well as fees for service of process.  (<u>See</u> Rumack Decl. at Ex. A).  This Court generally approves requests that are reasonable and well-documented.  <u>See, e.g.</u>, <u>Kalloo v. Unlimited Mech. Co. of NY, Inc.</u>, 977 F. Supp. 2d 209, 214 (E.D.N.Y. 2013) (approving request for $9,276.36 in costs for filing fees, fees for service of process, and the costs of transcripts of depositions, since these costs were "supported by . . . contemporaneous records"); <u>Cho v. Koam Med. Servs. P.C.</u>, 524 F. Supp. 2d at 211-12 (reducing a request for cost of electronic research, but finding that "taxable costs, such as filing and subpoena fees as well as monies expended by transcripts, printing, copying, and witnesses are shifted to the losing party").

     The Court finds the requested costs are reasonable, and respectfully recommends that plaintiff be awarded **$514.25** in costs.

31

D.     Post-Judgment Interest

Finally, plaintiff also seeks post-judgment interest, pursuant to 28 U.S.C. § 1961, which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Under the statute, interest is calculated from the date of the entry of the judgment, at the weekly average 1-year constant maturity Treasury yield rate published by the Board of Governors of the Federal Reserve System for the preceding calendar week. Id.; see also Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir 2008) (noting that "post-judgment interest is governed by federal statute"). Thus, the Court recommends that the plaintiff be awarded post-judgment interest.

CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that plaintiff's motion be granted, and that plaintiff be awarded a total of **$63,470.25**, consisting of: $4,964 in unpaid minimum wages; $10,910.50 in unpaid overtime; $31,749 in liquidated damages; $2,740.50 in unpaid spread of hours wages; $2,500 for failure to provide statements required under the New York law; $10,092 in attorney's fees, and $514.25 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
        September 4, 2014

/s/ CHERYL POLLAK

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

33